# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| SANDY RAE GRAF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 5:20-06115-CV-RK |
| | ) |
| COMMISSIONER, SOCIAL | ) |
| SECURITY ADMINISTRATION; | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Plaintiff's appeal brought under 42 U.S.C. § 405(g) seeking review of Defendant Commissioner of Social Security Administration's ("SSA") denial of disability benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). For the reasons below, the decision of the ALJ is **AFFIRMED**.[1]

## Standard of Review

The Court's review of the ALJ's decision to deny disability benefits is limited to determining if the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). "Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). In determining whether existing evidence is substantial, the Court takes into account "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). "If the ALJ's decision is supported by substantial evidence, [the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (citing

---

[1] On review of the record, Defendant's briefing is found persuasive. Portions of Defendant's briefing are incorporated herein without further citation.

*Davis*, 239 F.3d at 966). The Court does not "re-weigh the evidence presented to the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003)). The Court must "defer heavily to the findings and conclusions of the [ALJ]." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citation omitted).

## Discussion

By way of overview, the ALJ determined Plaintiff has the following severe impairments: degenerative disc disease of cervical and lumbar spine, bursitis of the bilateral shoulders, neuropathy of the wrists and elbows, and bilateral carpal tunnel syndrome (20 CFR 404.1520(c)). The ALJ also determined that Plaintiff has the following non-severe impairments: depression and a history of other conditions including obesity, dyslipidemia, and anxiety. However, the ALJ found that none of Plaintiff's impairments, whether considered alone or in combination, meet or medically equal the criteria of one of the listed impairments in 20 CFR Pt. 404, Subpt. P, App. 1 ("Listing"). Additionally, the ALJ found that despite her limitations, Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b), except she can never climb ladders, ropes, or scaffolds; and can occasionally climb ramps and stairs, stoop, balance, kneel, crouch, and crawl. The ALJ found Plaintiff can tolerate occasional exposure to temperature extremes, vibration, and hazards. She also found Plaintiff can no more than frequently reach, handle, and finger, bilaterally. Although the ALJ found that Plaintiff is unable to perform any past relevant work, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, Plaintiff can perform jobs that exist in significant numbers in the national economy. Notably, the ALJ additionally determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms "are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 16.)

On appeal Plaintiff maintains the RFC was unsupported by substantial evidence and the ALJ erred in discrediting Plaintiff's subjective reports.

### I. Physical RFC Supported by Substantial Evidence

Plaintiff first argues the RFC was unsupported by substantial evidence, in that the ALJ did not have any evidence from a medical source that specifically addressed Plaintiff's limitations, and the medical evidence revealed significant abnormalities inconsistent with the RFC. Plaintiff

2

contends that the ALJ found the only medical opinion unpersuasive and then failed to support the limitations in the RFC with evidence or sufficiently explain how she reached her conclusion.

ALJs are tasked with evaluating the evidence taken as a whole, resolving any inconsistencies, and formulating an RFC finding that reflects a claimant's functional limitations, as consistent with the evidence. 20 C.F.R. §§ 404.1545, 404.1546. "The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Hensley v. Colvin*, 829 F.3d 926, 931-32 (8th Cir. 2016) (internal quotation omitted). "It is the function of the [ALJ] to weigh conflicting evidence and to resolve disagreements among physicians." *Cline*, 771 F.3d at 1103 (citing *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007)). However, "[b]ecause a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quotation and citation omitted). "The ALJ may not simply draw [her] own inferences about plaintiff's functional ability from medical reports." *Id.* (quotation and citation omitted). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley*, 829 F.3d at 932.

Here, the ALJ looked to examination findings, medical evidence of record, treatment history and efficacy of treatment, the opinions and administrative findings to the extent they were persuasive, and Plaintiff's activities of daily living. (Tr. at 18.) In finding Plaintiff had the RFC to perform light work with additional restrictions, the ALJ noted Plaintiff's allegations of her limitations, including restrictions to physical activities involving lifting, carrying, sitting, standing, and walking. (Tr. at 16.) She also considered Plaintiff's reported use of prescription medication for the alleged impairments, side effect of sleepiness from Hydrocodone, resulting change to Tramadol and over-the-counter ibuprofen, and additional use of essential oils, numbing creams, and ice for pain relief. (*Id.*)

The ALJ then analyzed the objective medical evidence on record, beginning with July 2018 when Plaintiff sought treatment for what she said was a work-related injury of strained posterior cervical area and trapezius muscles from lifting 40-pound equipment. (*Id.*) The ALJ noted Plaintiff's report to her primary care physician on August 10, 2018, that she had been experiencing wrist, shoulder, and neck pain for the past two to three months with no change in workload or activities, though she had stopped being a court reporter because she was in so much pain. The

3

notes from the visit also indicated Plaintiff had tried ibuprofen, which she reported was not helpful, and had not done any formal physical therapy. (*Id.*) The ALJ considered a neurological examination that revealed Plaintiff to have normal gait and normal muscle strength, bulk, and tone in bilateral upper and lower extremities, then a spine examination that revealed evidence of rounded shoulder/head-forward posture and some tenderness in the bilateral trapezius. She noted a Phalen's test was positive at the left wrist and Tinel's test was negative at bilateral wrists and elbows. (*Id.*) The ALJ accounted for an EMG that showed carpal tunnel syndrome with moderate to severe median neuropathy of the left wrist, mild median neuropathy of the right wrist, and mild bilateral ulnar neuropathy at the elbows. (*Id.*) She noted the lack of evidence of an acute bilateral cervical radiculopathy. (*Id.*) The ALJ considered an MRI of Plaintiff's cervical spine that demonstrated mild multilevel degenerative changes, and a resulting recommendation of conservative treatment, as well as a subsequent discussion of cervical traction on August 17, 2018. (*Id.*) The ALJ also observed that an MRI of September 11, 2018, showed mild degenerative disc disease with disc protrusion at C5-C6. (*Id.* at 17.)

The ALJ noted that a follow up neck MRI on October 10, 2018, showed mostly mild degenerative changes but Plaintiff still rated her pain from seven to nine out of ten. (*Id.* at 16.) She observed that the examination noted discomfort, but normal gait and normal range of motion of spine. (*Id.*) The ALJ considered that shoulder range of motion was also normal, though Plaintiff reported paresthesia of hands much worse on the left. (*Id.*) The ALJ considered Plaintiff's January 7, 2019 report that she was working as a court reporter and having an increase in stress from moving, although she did have improvement in her left shoulder since an injection, which gave her relief for several months. (*Id.*) This medical record indicated the cervical MRI had not shown any acute nerve compression and that the EMG had shown moderate neuropathy at wrists and elbows. (*Id.*) The ALJ noted the neurological examination revealed normal gait, balance, and coordination, though impingement maneuvers were positive in Plaintiff's left shoulder. (*Id.*) The ALJ considered that the report stated if bracing or splinting did not provide relief, a surgical referral would be recommended, and that Plaintiff reported she had lost her splints and had not used them recently. (*Id.* at 16-17.) The ALJ considered Plaintiff's January 23, 2019 injection for bursitis and a July 7, 2019 left shoulder MRI showing small joint effusions with no degeneration or tear, but fluid in the subdeltoid bursa that was suspicious for acute bursitis. (*Id.* at 17.)

Additional medical records the ALJ considered included a March 8, 2019 cold laser therapy treatment for shoulder bursitis, which was noted to be well-tolerated. (*Id.*) The ALJ noted Plaintiff's July 24, 2019 report of ongoing shoulder pain, worse on the left, with temporary relief from shoulder injections that wore off fast. (*Id.*) Plaintiff also had limited upper extremity range of motion and tenderness to palpitation of shoulders, left worse than right, at the time of the exam. (*Id.*) Plaintiff reported improvement on July 29, 2019, following a cold laser treatment, and wanted to do a series. (*Id.*) The ALJ observed Plaintiff had another cold laser treatment for her bilateral shoulders and neck on August 7, 2019, and wanted to add wrists. (*Id.*) The ALJ considered that Plaintiff received the fourth of four cold laser treatments on August 21, 2019, for bilateral shoulders, neck, and bilateral wrists, which was tolerated well. (*Id.*)

The ALJ then considered that Plaintiff only occasionally took pain medication and had seen a chiropractor, but had not frequently visited a hospital emergency room, had not had frequent inpatient hospitalizations for any orthopedic problem, and had not received physical therapy, bracing, or surgery during the relevant period. (*Id.*) The ALJ found Plaintiff's treatment had been essentially routine and/or conservative and that Plaintiff had chosen not to try injections and to not yet have surgery. The ALJ summarized Plaintiff's work history of court reporting, noting her income fluctuated over the fifteen years of that career. (*Id.*)

The ALJ further considered Plaintiff's activities of daily living, noting that Plaintiff admitted a generally active lifestyle, not limited to the extent one would expect given her subjective complaints of pain and limitation. (*Id.*) She noted Plaintiff's reports and testimony of her capacity to tend to her personal needs, homeschool her teenage daughter, go out alone, drive, cook simple meals, shop via smartphone, socialize, attend church, clean by wiping counters and toilets, help load the dishwasher, do small amounts of laundry, handle finances, and read. (*Id.*) The ALJ acknowledged Plaintiff described limitations in her ability to engage in many of these activities, but concluded that her ability to perform them suggested she retained some capacity to perform activities such as sitting, standing, walking, and functioning outside her home environment. (*Id.*)

Finally, the ALJ considered opinion evidence from State Agency medical consultant Judee Bland, M.D., and chiropractor Harold Holmes, D.C. Dr. Bland found Plaintiff had severe degenerative disc disease and that the evidence of record did not satisfy the requirements of listing 1.04, pertaining to spinal disorders. (*Id.* at 18.) Dr. Bland did not offer a statement about Plaintiff's functional capacity because she found there was insufficient evidence to evaluate the claim further.

5

(*Id.*)  On July 12, 2019, Dr. Holmes recommended Plaintiff ice the cervical area at which she was experiencing pain, and that she should avoid heavy lifting and long periods of standing.  (*Id.*)  The ALJ found Dr. Holmes's lifting and standing limitations were vague and nonspecific, and therefore concluded they were not persuasive.  (*Id.*)

Plaintiff primarily relies on *Spackman v. Colvin* as support for her argument the RFC is unsupported by substantial evidence.  No. 2:14-CV-04125-NKL, 2015 WL 518564, at *3 (W.D. Mo. Feb. 9, 2015).  The Court in *Spackman* recognized that while "an ALJ's assessment [of the RFC] must be supported by some medical evidence of the claimant's ability to function in the workplace . . . it is ultimately an administrative determination reserved to the Commissioner." *Id.* (quoting *Cox*, 495 F.3d at 619).  However, in *Spackman*, the Court found while the record contained substantial evidence to support the ALJ's decision to discount a physician's opinions, the record contained no other opinions from the plaintiff's medical providers regarding her physical capacity and ability to work, and so the ALJ had insufficient evidence to accurately assess the plaintiff's RFC.  *Id.*  The *Spackman* Court concluded the record contained insufficient evidence for the ALJ to reach an RFC determination absent additional medical opinions.  *Id.*  (citing *Wadsworth v. Astrue*, No. 10-0351-SSA-CV-W-MJW, 2011 WL 900993 (W.D. Mo. Mar. 15, 2011) (reversing and remanding the ALJ's decision when the ALJ discounted the treating physician's opinion and the record contained no other medical evidence to support a determination as to the claimant's RFC)).

Because Plaintiff applied for benefits on or after March 27, 2017, the ALJ applied the new set of regulations for evaluating the opinions on the record.  The revised regulations redefine how evidence is categorized, including "medical opinion" and "prior administrative findings," and how an ALJ will consider these categories of evidence in making the RFC determination.  See 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), & 416.920c.  Moreover, an ALJ is "not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).  Instead, an ALJ may properly develop an RFC based on all of the evidence.  *Lockwood v. Colvin*, 627 F. App'x 575, 576 (8th Cir. 2015).  "SSR 96-8p requires only that the evidence, both medical and non-medical, be discussed in a way that would support each conclusion, not that each conclusion must be individually discussed and independently supported." *Wilfong v. Berryhill*, No. 4:17-cv-2747-SNLJ, 2018 WL 4489453, at *4 (E.D. Mo. Sept. 19, 2018).  *Hensley v. Colvin*, 829 F.3d 926, 932

6

(8th Cir. 2016) (there is no requirement that an RFC finding be supported by a specific medical opinion).

Therefore, Plaintiff's argument that the ALJ had insufficient evidence to accurately assess Plaintiff's RFC is "contrary to agency regulations and policy" that guides and governs the ALJ's decision. *Starbuck v. Kijakazi*, No. 62003221CVSMDHSSA, 2021 WL 3892750, at *5 (W.D. Mo. Aug. 31, 2021). The ALJ's task was to evaluate the persuasive value of the opinion evidence based on the record as a whole, and that is precisely what the ALJ did here. Also, the ALJ cited substantial medical evidence to which the ALJ afforded weight in formulating Plaintiff's RFC. (Tr. 16-18); s*ee Combs*, 878 F.3d at 646 ("substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion"); *Hensley*, 829 F.3d at 932 (in the absence of medical opinion evidence, medical records can provide affirmative medical evidence supporting an RFC; with a medical record adequately developed, an ALJ need not seek additional information or order a consultative examination). These considerations were incorporated in the RFC and "the totality of [her] analysis makes clear [the ALJ] followed the evidentiary pathway set forth in SSR 96-8p." *Wilfong*, 2018 WL 4489453, at *4.

Plaintiff's argument that the RFC was unsupported by substantial evidence is without merit.

## II. Determination Plaintiff's Subjective Reports Were Not Entirely Consistent With the Medical Evidence and Other Evidence Supported by Substantial Evidence

Plaintiff also argues the ALJ erred in discrediting Plaintiff's subjective reports based on her determination that Plaintiff's conservative treatment, objective evidence, and daily activities were inconsistent with Plaintiff's subjective reports. Plaintiff contends the ALJ relied on a mistaken classification of the record, overlooked relevant evidence, and did not address factors that bolstered Plaintiff's credibility.

When evaluating a plaintiff's subjective complaints, an ALJ "must give full consideration to all of the evidence presented relating to subjective complaints . . . [including]: (1) the claimant's daily activities; (2) the duration, frequency and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see also* SSR 16-3p, 2016 WL 1020935 (Mar. 16, 2016). "The ALJ is not required to discuss methodically each *Polaski* consideration, so long as he acknowledges and examines those considerations before discounting the [plaintiff's]

7

Case 5:20-cv-06115-RK   Document 17   Filed 03/04/22   Page 7 of 10

subjective complaints." *McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (cleaned up). The ALJ may discredit subjective complaints if they are "inconsistent with the evidence on the record as a whole" but must "make an express credibility determination detailing his reasons for discrediting the testimony." *Delrosa v. Sullivan*, 922 F.2d 480, 485 (8th Cir. 1991). In reviewing the ALJ's decision, this Court "will not substitute its opinion for the ALJ's, who is in the better position to gauge credibility and resolve conflicts in the evidence." *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007).

Here, as pointed out by Defendant, considering the record as a whole, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence in the record. (Tr. 16-18.) Contrary to Plaintiff's assertions, the ALJ appropriately found that Plaintiff's conservative treatment, relatively benign objective evidence, and daily activities were not consistent with the alleged severity of Plaintiff's impairments. (Tr. 17.)

The ALJ considered evidence that Plaintiff took medications, was counseled to use wrist braces, participated in chiropractic care, received injections, received cold laser therapy, and was counseled to get carpal tunnel surgery and found Plaintiff's treatment to be "essentially routine and/or conservative in nature." (Tr. 16-17.) The ALJ also pointed out that Plaintiff only occasionally took pain medication, had not had frequent emergency room visits or inpatient hospitalizations for orthopedic problems, had not received physical therapy, had not received braces, and had not had surgery during the relevant time period. (Tr. 17, 47.) Regarding surgery, the ALJ noted that Plaintiff had chosen not to have surgery at that time. (Tr. 17.) If the "frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints," then the ALJ may find the alleged intensity and persistence of symptoms to be "inconsistent with the overall evidence of record." SSR 16-3p. Substantial evidence supports the ALJ's finding that Plaintiff's treatment was conservative in nature.

An ALJ may discount subjective complaints that are undermined by the medical evidence. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). Here, the ALJ considered Plaintiff's reports that she had restrictions in lifting, carrying, sitting, standing, and walking. (Tr. 16, 187.) However, the ALJ also considered the objective evidence and found it to be "relatively benign." (Tr. 17.) As detailed in the decision and above, this evidence included: examinations where Plaintiff demonstrated normal gait, normal muscle strength/bulk/tone in upper and lower

8

extremities, normal range of motion in spine and shoulders, and normal balance/coordination; a negative Tinel's test in both wrists and elbows; EMG results with moderate to severe findings at the left wrist but only mild findings at the right wrist and both elbows; and generally mild findings in MRIs of Plaintiff's cervical spine, neck, and left shoulder. (Tr. 16-17, 295, 297-98, 303, 305, 308, 311, 319, 324, 329-30.) This substantial evidence supports the ALJ's finding that the objective evidence was "relatively benign" and inconsistent with Plaintiff's various reported limitations.

As to Plaintiff's activities of daily living, Plaintiff fails to support her assertion that her activities of daily living were consistent with the severity of her alleged impairments. The ALJ found that Plaintiff reported a generally active lifestyle, and the ALJ identified numerous examples of Plaintiff's daily activities to support the finding. (Tr. 17.) Further, the ALJ did not overstate Plaintiff's abilities, and none of Plaintiff's examples (for instance, Plaintiff reported laundry was too painful, she was unable to vacuum or clean the shower or tub, and she could only drive short distances) contradicts any finding by the ALJ. The ALJ never found that Plaintiff was able to vacuum or clean the shower or tub as Plaintiff seems to imply. (Tr. 17.) Regarding laundry, Plaintiff's citation to the record does not support her assertion, and the ALJ accurately found Plaintiff reported she could do small amounts of laundry (for instance, Plaintiff testified she can do a few shirts but not big loads). (Tr. 17, 42-43.) With respect to driving, Plaintiff did testify she could drive, and the ALJ noted Plaintiff described limitations in her ability to engage in many activities, including driving. (Tr. 17, 42, 54.) Plaintiff has failed to establish that the ALJ overstated her abilities.

As to Plaintiff's argument that the ALJ failed to consider the consistency of Plaintiff's reports with her statements to her medical provider, the ALJ is not required to discuss every piece of evidence submitted. *Hensley*, 829 F.3d at 933. Furthermore, an ALJ's failure to cite to a specific piece of evidence does not mean that it was not considered. *Chaney v. Colvin* 812 F.3d 672, 678 (8th Cir. 2016). The ALJ is not obligated to discuss every possible factor in SSR 16-3p and 20 C.F.R. § 404.1529. Rather, if the ALJ discredits a claimant's credibility and gives a good reason for doing so, the court will defer to her judgment even if every factor set forth in *Polaski v. Heckler* is not explicitly discussed. *See Milam v. Colvin*, 794 F.3d 978, 984 (8th Cir. 2015).

The ALJ properly evaluated Plaintiff's subjective reports, and substantial evidence of record supports the ALJ's finding that Plaintiff's reports were not entirely consistent with the medical and other evidence in the record.

## Conclusion

Having carefully reviewed the record before the Court and the parties' submissions on appeal, the Court concludes that substantial evidence on the record as a whole supports the ALJ's decision for the reasons set forth in the Commissioner's brief.

IT IS THEREFORE ORDERED that the decision of the ALJ is **AFFIRMED**.

/s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: March 4, 2022